FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

2015 MAR 23  P 12: 07

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES COMMODITY FUTURES
TRADING COMMISSION,

          **Plaintiff,**

v.

WESLEY ALLEN BROWN,
EDWARD RUBIN,
and
MAVERICK INTERNATIONAL, INC.,

          **Defendants.**

Civil Action No. 3:15-cv-354-J-39MCR

FILED UNDER SEAL

2015 MAR 25  A 8: 46

FILED

---

## COMPLAINT FOR INJUNCTIVE RELIEF,  CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF UNDER THE COMMODITY EXCHANGE ACT

### I.    SUMMARY

1.    From at least June 18, 2008 through October 2013 (the "relevant period"), Wesley Allan Brown ("Brown") and Edward Rubin ("Rubin"), individually and on behalf of  Maverick International, Inc. ("Maverick") (collectively, the "Defendants"), solicited, accepted, and received funds from members of the public to participate in a pooled investment vehicle named the "Maverick International Fund" for the purpose of trading in commodity interests, including commodities for future delivery.  Instead of trading on behalf of participants, however, Defendants misappropriated all of the approximately $2 million they received from not less than 31 participants and used these funds for their personal benefit.

2.    Brown used his position as an associate pastor at a Palm Coast, Florida church to solicit congregants to participate in the fraudulent scheme.  Through in-person solicitations, and use of the Defendants' website *www.wealthnavigator.org* (the

S-3

"website"), Brown claimed the Defendants profitably traded commodity futures and precious metals on behalf of participants.  These representations were false, because Defendants misappropriated all of the participants' funds, and no trading on behalf of participants took place.

3.      In addition to misappropriating participants' funds, Brown and Rubin, individually and on behalf of Maverick, made pervasive misrepresentations of material facts to participants, including but not limited to, falsely claiming to have profitably traded on behalf of participants, and providing participants false account statements of fabricated trading and profits.  Brown and Rubin, individually and on behalf of Maverick, also pervasively omitted material facts in their communications with participants, including but not limited to: failing to advise participants that the Defendants were misappropriating participants' funds; that Defendants were operating an illegal enterprise because Maverick was not registered as a commodity pool operator ("CPO") as required by the Commodity Exchange Act ("Act"); Maverick was not operating the pool as a separate entity as required by Commission Regulations ("Regulations"); and, Brown and Rubin were not registered as associated persons ("APs") of a CPO as required by the Act.

4.      Defendants used the bankruptcy of futures commission merchant ("FCM") Peregrine Financial Group, Inc. ("PFGBest") as a means to cover-up their fraudulent scheme by representing to participants that they had sustained a complete loss of their funds as a result of the PFGBest bankruptcy.  In fact, Defendants had already misappropriated all funds of the participants' prior to the PFGBest bankruptcy, and used said funds for their own personal enrichment.

5.      By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of provisions of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.*

2

(2006 & Supp. IV 2011), and certain Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

6.    The acts and omissions of Brown and Rubin occurred within the course and scope of their employment, agency, and/or office with Maverick.  Therefore, Maverick is liable for these acts and omissions under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2012).

7.    Brown and Rubin controlled Maverick, directly or indirectly, throughout the relevant period and did not act in good faith or knowingly induced Maverick's violations of the Act and Regulations.  Therefore, Brown and Rubin are liable for Maverick's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).

8.    Accordingly, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act and the Regulations thereunder, and to enjoin them from engaging in any commodity related activity.

9.    In addition, the Commission seeks civil monetary penalties for conduct in violation of the Act and Commission Regulations, and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

10.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in this Complaint, and similar acts and practices, as more fully described below.

## II.      JURISDICTION AND VENUE

11.      The Court has jurisdiction over this action pursuant to Section 6c of the
Act, as amended, 7 U.S.C. § 13a-1 (2012), which authorizes the Commission to bring an
action in proper district courts of the United States in order to seek injunctive and other
relief against any person whenever it shall appear to the Commission that such person has
engaged, is engaging, or is about to engage in any act or practice constituting a violation
of any provision of the Act or any rule, regulation or order thereunder.

12.      The Commission has jurisdiction over the conduct and transactions at issue
in this case pursuant to 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2012).

13.      Venue properly lies with the Court pursuant to Section 6c(e) of the Act, as
amended, 7 U.S.C. § 13a-1(e) (2012), because Defendants transact business in this District
and certain transactions, acts, practices, and courses of business alleged in this Complaint
occurred, are occurring, and/or are about to occur within this District.  In addition, most of
the Defendants' customers reside within this District and regularly conducted business
with the Defendants within this District.

## III.      PARTIES

14.      Plaintiff **United States Commodity Futures Trading Commission** is an
independent federal regulatory agency that is charged by Congress with the administration
and enforcement of the Act, as amended by the CRA and the Dodd-Frank Wall Street
Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203,
Title VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124
Stat. 1376 (effective July 16, 2011), 7 U.S.C. §§ 1 *et seq.*, and the Regulations
promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2014).  The Commission maintains its
principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C.
20581.

4

15.     Defendant **Wesley Alan Brown** currently resides in North Myrtle Beach, South Carolina; during the relevant period Brown resided in Palm Coast, Florida.  Brown held himself out as a "financial advisor" associated with Maverick.  Brown has never been registered with the Commission in any capacity.  Brown was registered as a securities broker/dealer agent from August 1991 through May 1996.

16.     Defendant **Edward Rubin** resides in Winnabow, North Carolina.  Rubin opened the commodity trading account carried in the name of Maverick at PFGBest, and was solely responsible for all futures trading in the account.  Rubin was the sole officer of Maverick throughout the relevant period.  Rubin has never been registered with the Commission in any capacity.

17.     Defendant **Maverick International, Inc.** is a corporate entity organized by Rubin pursuant to the laws of the State of Delaware on or about November 17, 2006, and purportedly maintains offices at 2711 Centerville Road, Suite 120, PMB# 6113, Wilmington, Delaware, 19808; however, this address is actually the address of a mail forwarding service.

### IV.     STATUTORY BACKGROUND

### A.     Statutory and Regulatory Requirements Related to Fraud by CPO and APs

18.     Prior to July 16, 2011, Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2006), defined a CPO or "commodity pool operator" as any firm or individual engaged in a business which is of the nature of an investment trust, syndicate, or similar form of enterprise, and that, in connection therewith, solicits, accepts, or receives from others funds, securities, or property, either directly through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market.  On July 16, 2011, the

amendments to Title VII of the Dodd-Frank Act became effective, and the definition of a CPO was clarified, expanded, and re-designated in Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012).

19.     Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2006), in relevant part, makes it unlawful for a CPO, or the AP of a CPO, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly: (A) to employ any device, scheme or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

20.     It is a violation of the Act for any person, in or in connection with any order to make, or the making of, any on-exchange futures contract, for or on behalf of any other person: (i) to cheat or defraud or attempt to cheat or defraud such other person; (ii) willfully to willfully to enter or cause to be entered for such person any false record thereof; or (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act or agency performed with respect to such order or contract for such person.  Section 4b(a)(1)(A)-(C) of the Act, as amended, 7 U.S.C. § 6b(a)(1)(A)-(C) (2006 & Supp. IV 2011).

**B.     Registration Requirements**

21.     With certain exemptions and exclusions not applicable here, all CPOs must register with the Commission pursuant to Section 4m(1) of the Act, as amended, 7 U.S.C. § 6m(1) (2006 & Supp. IV 2011).

22.     With certain exemptions and exclusions not applicable here, it is unlawful for any person to be associated with a CPO as a partner, officer, employee, consultant or

agent (or any person occupying a similar status of performing similar functions), in any

capacity that involves (i) the solicitation of funds, securities or property for a participation

in a commodity pool or (ii) the supervision of any person or persons so engaged, unless

the person is registered with the Commission as an AP of such CPO.  Section 4k(2) of the

Act, 7 U.S.C.

§ 6k(2) (2006).

## V.   FACTS

### A.   The Fraudulent Scheme

23.     During the relevant period, Brown and Rubin, individually and on behalf of

Maverick, fraudulently solicited at least 31 pool participants, and accepted or received

approximately $2 million from pool participants, either directly or indirectly through

capital contributions, the sale of stock or other forms of securities, for the purpose of

trading commodity interests, including exchange traded commodity futures contracts and

precious metals.  Defendants thereupon misappropriated all funds they received from

participants.

24.     Brown and Rubin, individually and on behalf of Maverick, claimed to sell

participants shares of stock in Maverick, representing that participants' funds would be

pooled and used to trade commodity futures and precious metals, among other things, in a

pooled investment vehicle Brown and Rubin identified as the "Maverick International

Fund."

25.     Defendants provided potential and actual participants with access to the

Defendants' website, which contained solicitations to trade in commodity futures contracts

and precious metals, in addition to other things.

26.     Brown claimed to be an experienced trader and financial advisor, and used

his position as an associate pastor at a church located in Flagler Beach, Florida to solicit

7

many of the persons who participated in the fraudulent scheme. By convincing them over time to trust him, Brown gained access to their friends and family and pulled them into the fraudulent scheme. The participants in the pool included a retired fireman from the New York City Fire Department, a retired airline mechanic, and others living on a fixed income.

27.     In an email to one participant, Brown represented that the "Maverick International Fund" was a "diversified fund which holds gold, silver, energies, and food staples. It is a wonderful way to diversify you overall profolio (sic) and take advantage of upswings due to ever-diminishing natural resources. The website is www.wealthnavigator.org. Go to 'clients only' page for current share prices."

28.     Once a participant had been convinced to invest their funds in the pool, the Defendants presented them with a one page "Private Placement – Letter of Intent and Disclosure" on Maverick letterhead, that purportedly showed them how many shares they had purchased, and the shares' current value. These letters also stated: "Expenses and fees are expected to approximate 20-25% of profits only. No fees will be assessed against my principal deposit, thereby Maverick International, Inc. earns fees only when the corporation's shares earn profit."

29.     At the bottom of each letter was a statement noting the shareholder's name, address, the number of shares purchased and their purported value. Each letter also contained a notation "Approved and dated by Management" followed by Rubin's name and telephone number. Each letter was initialed and dated by Brown.

30.     Some participants were provided a "Deposit Receipt" on Maverick letterhead, containing similar information. These documents also noted: "For additional deposits or withdrawals regarding your account, please contact your Account

Representative, Wesley A. Brown at 910.471.****. In an emergency, you may also contact your alternate representative, Edward Rubin at 910.789.****."

31.    Participants were mailed a "share purchase" statement noting how many shares of Maverick stock they purchased. At the bottom of each statement was a notation that they should contact Brown if they had any questions regarding their account, or wished to make "additional deposits."

32.    Brown represented to potential and actual participants, individually and on behalf of Maverick, in writing and in face-to-face meetings, that participants could check the value of their investment by accessing the website where they could see the "current share price per share" of Maverick. The "current share price per share" displayed on the website was false, because Defendants' immediately misappropriated all funds given to them by participants, therefore the "shares" were worthless.

33.    Throughout the relevant period, Defendants represented to participants that Defendants were profitably trading in commodity futures contracts and precious metals, on behalf of participants. All such claims of profits were false, because no trading on behalf of participants occurred, and all participant funds were misappropriated by Defendants.

34.    Defendants also represented that they traded precious metals on behalf of participants. These representations were also false.

35.    In fact, Brown and Rubin opened accounts in their respective names at Bullion Direct, Inc., and used misappropriated participants' funds to buy and sell precious metals in their personal accounts for their personal enrichment.

36.    In an effort to conceal their misappropriation, Defendants mailed participants a "Semi-Annual Report" that purported to show each participant their

respective "portfolio holdings." Contact information for both Brown and Rubin was noted on each report.

37.     Although each report was different, it typically noted the number of "shares" of Maverick stock purportedly held by each participant, the number of ounces of "silver remaining with client," and the number of "ounces of silver on account with Maverick International, Inc." All of the information on these reports was false, because Defendants had already misappropriated all of the funds given to them by participants.

38.     During the relevant period, Brown and Rubin solicited at least $2 million from pool participants for the Maverick commodity pool. Brown and Rubin deposited these funds into bank and trading accounts they opened in Maverick's name, not in the name of the pool, as well as in personal bank accounts.

39.     Brown and Rubin spent approximately $1 million of pool participants' money on personal and business expenses during the relevant period, including: restaurant meals, rent payments, travel, business fees, and $211,413.90 in cash withdrawals.

40.     Brown and Rubin also opened personal precious metals accounts held in their respective names with Bullion Direct, Inc., and deposited a combined total of $395,669.37 of pool participants' funds into these account during the relevant period.

41.     When some pool participants asked for their funds back during the course of the Defendants' fraudulent, scheme, Defendants returned funds to some pool participants, using funds received from later participants to pay prior participants, in the nature of a "Ponzi" scheme.

42.     In furtherance of the fraudulent scheme, Brown and Rubin, individually and as the agent(s) of Maverick made material misrepresentations and omitted material facts in their solicitations and statements to actual and prospective participants, including but not limited to: (a) failing to advise participants that Defendants  misappropriated

participants' funds; (b) failing to disclose that the account statements provided to participants were false; (c) failing to advise participants that no futures trading on behalf of participants ever occurred; (d) failing to disclose that Maverick was operating as a CPO without being registered with the CFTC as such; and (e) failing to disclose that Brown and Rubin were each acting as an AP of a CPO(s) without being registered with the CFTC as such.

### B.      The Attempt to Conceal the Misappropriation

43.     Defendants  attempted to conceal their misappropriation of participants' funds by representing to participants in a letter dated October 5, 2012, that their funds had been "invested" at the FCM PFGBest, and that all participant funds had been "lost" as a result of the bankruptcy of PFGBest on July 10, 2012, nearly three months earlier.  These representations were false.

44.     Brown also met personally with participants who were members of his church, in October 2012 and thereafter, representing that all of their funds had been lost because of the bankruptcy of PFGBest, and claiming that he had lost his own funds too. These representations were false.

45.     While Rubin had opened a commodity trading account at PFGBest, the account was not carried as a pooled account for the benefit of participants, but as a proprietary account in the name of Maverick; therefore all funds deposited into the account were misappropriated.  Moreover, only approximately $500,000 of the $2 million total participant funds collected by Defendants was deposited into the account.

46.     Further, of the approximately $500,000 deposited into the account, more than $400,000 had been lost in unsuccessful trading of commodity futures contracts.  At all times relevant hereto, Rubin was the sole person authorized to trade the account.

11

47.     At the time of PFGBest's bankruptcy, and as a direct result of Rubin's unprofitable trading, there remained approximately $97,000 in the trading account at PFGBest.  As a result of the bankruptcy, this amount was reduced to $27,191.87.

48.     Following the resolution of the bankruptcy of PFGBest, the remaining balance in the Maverick account was transferred to another FCM, Vision Financial Markets, LLC ("Vision").  On November 29, 2012, Rubin signed an authorization directing Vision to issue a check for the balance of $27,191.87 to Maverick.  These funds were not returned to participants, but also misappropriated by Defendants.

49.     At no time did Brown or Rubin, acting individually and as the agents of Maverick, advise participants that Defendants had misappropriated their funds, that no trading on behalf of participants had ever occurred, that the bankruptcy of PFGBest was not the true cause of the loss of all participant funds, and that Defendants had been operating an illegal business enterprise.

50.     All of the misrepresentations and omissions of fact by Brown and Rubin were material.

**C.     Maverick Failed to Register with the Commission as a CPO**

51.     During the relevant period, Maverick acted as a CPO by soliciting, accepting or receiving funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including but not limited to, trading commodity futures contracts.

52.     Maverick used the mails and other means or instrumentalities of interstate commerce to provide potential pool participants with brochures and written statements about the "Maverick International Fund" commodity pool.

53.     Maverick accepted funds in interstate commerce by mail and/or wire transmissions for participation in the "Maverick International Fund" commodity pool, and both sent and received funds by mail and/or wire transmissions to misappropriate participants' funds.

54.     At no time during the relevant period was Maverick registered with the Commission as a CPO, or in any other capacity.

55.     At no time during the relevant period did Maverick hold a valid exemption from the requirement to register as a CPO.

56.     At no time during the relevant period did the Defendants advise prospective or actual pool participants that Maverick was not registered as a CPO as required by federal law.

**D.     Brown and Rubin Failed to Register with the Commission as APs of a CPO**

57.     Throughout the relevant period, Brown and Rubin, respectively, were associated with Maverick, a CPO, as a partner, officer, employee, consultant or agent (or any person occupying a similar status of performing similar functions), in any capacity that involved (i) the solicitation of funds, securities or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged; therefore, each has been AP of a CPO.

58.     As of the date of the filing of this Complaint, neither Brown nor Rubin have been registered with the Commission as an AP of Maverick, or in any other capacity.

59.     At no time during the relevant period have Brown or Rubin been exempt from the requirement to register as APs of a CPO.

13

60.     At no time during the relevant period did the Defendants advise prospective or actual pool participants that Brown and/or Rubin were not registered as APs of a CPO as required by federal law.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT
### COUNT I
### FRAUD IN CONNECTION WITH COMMODIITY FUTURES CONTRACTS
### (VIOLATIONS OF 7 U.S.C. § 6b(a)(1)(A)-(C))

61.     The allegations in the foregoing paragraphs are incorporated herein by reference.

62.     Sections 4b(a)(1)(A)-(C) of the Act, as amended, 7 U.S.C. § 6b(a)(1)(A)-(C), provides, in relevant part, that it is unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person…(A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

63.     As set forth above, during the relevant period, Brown and Rubin individually and on behalf of Maverick, violated Section 4b(a)(1)(A)-(C) of the Act, as amended, 7 U.S.C. § 6b(a)(1)(A)-(C), by, among other things: (1) misappropriating pool participant funds to pay personal and business expenses; (2) misappropriating pool

participant funds by using such funds to pay principal and purported returns to other pool participants; (3) issuing or causing to be issued false account statements to pool participants reflecting positive returns for the pool and increases in the value of individual pool participants' interest; (4) failing to disclose material information, including, that Maverick was not properly registered as a CPO and that Brown and Rubin were not properly registered as APs of a CPO; and (5) making misrepresentations concerning the pool's performance record and Brown's experience.

64.    Each misrepresentation or omission of material fact, issuance of a false statement or report, and misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A)-(C) of the Act, as amended, 7 U.S.C. § 6b(a)(1)(A)-(C).

65.    Brown and Rubin, individually and on behalf of Maverick, engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth.

66.    During the relevant time period, Brown and Rubin were acting as the officers, employees and/or agents of Maverick.  Therefore, Maverick is liable for Brown's and Rubin's violations of Section 4b(a)(1)(A)-(C) of the Act, as amended, 7 U.S.C. § 6b(a)(1)(A)-(C), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2.

67.    Rubin and Brown directly or indirectly controlled Maverick and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting their violations of Section 4b(a)(1)(A)-(C) of the Act, as amended, 7 U.S.C. § 6b(a)(1)(A)-(C).  Rubin and Brown are therefore liable for these violations of Maverick pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

15

68.     Each misappropriation, misrepresentation and/or omission of material fact and each false account statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A)-(C) of the Act, as amended, 7 U.S.C. § 6b(a)(1)(A)-(C).

## COUNT II
## FRAUD BY A COMMODITY POOL OPERATOR AND ASSOCIATED PERSONS
### (VIOLATION OF 7 U.S.C § 6o(1)(A) AND (B))

69.     The allegations in the foregoing paragraphs are incorporated herein by reference.

70.     Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B), prohibit CPOs and APs of CPOs from using the mails or any other means or instrumentality of interstate commerce to (A) employ any device, scheme or artifice to defraud any client or participant or prospective client or participant; or (B) engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective participant.

71.     As set forth above, during the relevant period, Maverick, through its agents Rubin and Brown, used the telephone, email, U.S. mail, and/or the Internet in or in connection with its business, and acted as a CPO by soliciting, accepting, or receiving funds from others while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in futures.

72.     As set forth above, during the relevant period, Brown and Rubin used the telephone, email, U.S. mail, and/or the Internet in or in connection with Maverick's business, and acted as APs of a CPO by soliciting, accepting, or receiving funds from

others while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in futures.

73.     Defendants violated Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B), in that they employed or are employing a device, scheme or artifice to defraud actual and prospective pool participants or engaged or are engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon the pool participants or prospective pool participants. The fraudulent acts include misappropriation, materially false omissions and misrepresentations, and distributing false account statements to pool participants.

74.     Defendants engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth.

75.     Rubin and Brown directly or indirectly controlled Maverick and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting their violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B). Rubin and Brown are therefore liable for Maverick's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

76.     During the relevant time period, Brown and Rubin were acting as the officers, employees and/or agents of Maverick. Therefore, Maverick is liable for Brown's and Rubin's violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2.

77.     Each act of fraud by Defendants, including each misappropriation, issuance of a false account statement, and material misrepresentation or omission, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B).

## COUNT III
### FAILURE TO REGISTER AS CPO
### (VIOLATION OF 7 U.S.C § 6m)

78.     The allegations in the foregoing paragraphs are incorporated herein by reference.

79.     With certain exemptions and exclusions not applicable here, all CPOs must register with the Commission pursuant to Section 4m of the Act, as amended, 7 U.S.C. § 6m.

80.     During the relevant period, Maverick operated as a CPO in that it engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and, in connection therewith, solicited, accepted, or received funds, securities, or property from others for the purpose of trading in commodity interests, including commodities for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.  In connection with such conduct, Maverick used the emails, mails, the Internet, and other means or instrumentalities of interstate commerce, directly or indirectly, to engage in its business as a CPO.

81.     At all times relevant to this Complaint, Maverick was not registered with the Commission as a CPO.

82.     At all times relevant to this Complaint, Maverick did not qualify, or apply for, an exemption from the requirement to register as a CPO under the Act or Commission Regulations.

83.     Maverick engaged in the activities described herein without having registered as a CPO, in violation of Section 4m of the Act.

84.     Rubin and Brown directly or indirectly controlled Maverick and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting their violations of Section 4m of the Act. Rubin and Brown are therefore liable for these violations of Maverick pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

85.     Each day that Maverick acted as a CPO without proper registration during the relevant period is alleged as a separate and distinct violation of Section 4m of the Act.

**COUNT IV**
**FAILURE TO REGISTER AS AN AP OF A CPO**
**(VIOLATION OF 7 U.S.C. § 6K(2))**

86.     The allegations in the foregoing paragraphs are incorporated herein by reference.

87.     Throughout the relevant period, Brown was associated with a CPO as a partner, officer, employee, consultant, or agent (or occupying a similar status or performing similar functions), in a capacity that involved (i) the solicitation of funds, securities, or property for a participation in a commodity pool, or (ii) the supervision of any person or persons so engaged.

88.     At no time during the relevant period was Brown registered with the commission as an AP of a CPO, in violation of Section 4k(2), 7 U.S.C. § 6k(2).

89.     During the relevant time period, Brown and Rubin were acting as the officers, employees and/or agents of Maverick. Therefore, Maverick is liable for Brown's and Rubin's violations of Section 4k(2) of the Act, 7 U.S.C. § 6k(2), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2.

90.     Each day that Brown acted as an AP of a CPO without proper registration during the relevant period is alleged as a separate and distinct violation of Section 4k(2) of the Act.

19

## COUNT V
## FAILURE TO REGISTER AS AN AP OF A CPO
### (VIOLATION OF 7 U.S.C. § 6K(2))

91.     The allegations in the foregoing paragraphs are incorporated herein by reference.

92.     Throughout the relevant period, Rubin was associated with a CPO as a partner, officer, employee, consultant, or agent (or occupying a similar status or performing similar functions), in a capacity that involved (i) the solicitation of funds, securities, or property for a participation in a commodity pool, or (ii) the supervision of any person or persons so engaged.

93.     At no time during the relevant period was Rubin registered with the commission as an AP of a CPO, in violation of Section 4k(2), 7 U.S.C. § 6k(2).

94.     During the relevant time period, Brown and Rubin were acting as the officers, employees and/or agents of Maverick.  Therefore, Maverick is liable for Brown's and Rubin's violations of Section 4k(2) of the Act, 7 U.S.C. § 6k(2), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2.

95.     Each day that Rubin acted as an AP of a CPO without proper registration during the relevant period is alleged as a separate and distinct violation of Section 4k(2) of the Act.

## COUNT VI
## FAILURE TO OPERATE COMMODITY POOL AS A SEPARATE LEGAL ENTITY,
## IMPROPER ACCEPTANCE OF FUNDS, AND COMMINGLING OF POOL FUNDS
### (VIOLATIONS OF 17 C.F.R. §4.20(a)-(c)(2012))

96.     The allegations in the foregoing paragraphs are incorporated herein by reference.

20

97.     Commission Regulation 4.20(a), 17 C.F.R. § 4.20(a), requires a CPO to operate its commodity pool as a legal entity separate from that of the CPO.

98.     Commission Regulation 4.20(b), 17 C.F.R. § 4.20(b), requires that all funds, securities, or other property received by a CPO from a prospective or existing pool participant must be received in the commodity pool's name.

99.     Commission Regulation 4.20(c), 17 C.F.R. § 4.20(c), prohibits a CPO from commingling the property of any pool it operates with the property of any other person.

97.     During the relevant period, Maverick, acting through Brown and Rubin and while acting as a CPO, violated Commission Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c), by:  (i) failing to operate the commodity pool as a legal entity separate from Maverick, the CPO; (ii) receiving pool participant funds the name of Maverick, rather than in the name of the commodity pool; and (iii) commingling the property of the commodity pool with the funds of Defendants.

98.     Rubin and Brown directly or indirectly controlled Maverick and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting their violations of Commission Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c).  Rubin and Brown are therefore liable for Maverick's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

99.     During the relevant time period, Brown and Rubin were acting as the officers, employees and/or agents of Maverick.  Therefore, Maverick is liable for Brown's and Rubin's violations of Commission Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2.

100.    Each violative act by Defendants, including each failure to operate the pool as a separate legal entity, receiving participant funds in the name of Maverick rather than in the name of the pool, and commingling the property of the pool, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Commission Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c).

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, and pursuant to the Court's inherent equitable powers:

A.  An order finding that Defendants violated Sections 4b(a)(1)(A)-(C) and 4m(1) of the Act, as amended, 7 U.S.C. §§ 6b(a)(1)(A)-(C) and 6m(1); Sections 4k(2) and 4o of the Act, 7 U.S.C. §§ 6k(2) and 6o; and Commission Regulation 4.20(a)-(c), 17 C.F.R.

B.  An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct that violates Sections 4b(a)(1)(A)-(C) and 4m(1) of the Act, as amended, 7 U.S.C. §§ 6b(a)(1)(A)-(C) and 6m(1); Sections 4k(2) and 4o of the Act, 7 U.S.C. §§ 6k(2) and 6o; and Commission Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c);

C.  An order of permanent injunction prohibiting Defendants, and any of their agents, servants, employees, successors, assigns, attorneys, and persons acting in active concert or participation with Defendants, including any successor thereof, from, directly or indirectly:

(1)    Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the CEA, 7 U.S.C. § 1a(29) (2012));

(2)     Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in CFTC Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1)) ("commodity options"), security futures products, foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the CEA, 7 U.S.C. §§ 2(c)(2)(B), 2(c)(2)(C)(i) (2012)) ("forex"), and/or swaps (as that term is defined in Section 1a(47) of the CEA, 7 U.S.C. § 1a(47) (2012)) for any Defendant's personal or proprietary account or for any account in which any Defendant has a direct or indirect interest;

(3)     Having any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps traded on any Defendants' behalf;

(4)     Controlling or directing the trading for, or on behalf of, any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

(5)     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

(6)     Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such

23

registration or exemption from registration with the CFTC, except as provided

for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014);

(7)     Acting as a principal (as that term is defined in Commission

Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or

employee of any person or entity registered, exempted from registration or

required to be registered with the CFTC, except as provided for in

Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014);

(8)     Engaging in any business activity related to commodity futures,

options on commodity futures, commodity options, swaps, security futures

products, and/or forex contracts;

    D.  An order directing Defendants, as well as any successors thereof, to

disgorge, pursuant to such procedure as the Court may order, all benefits received

from the acts or practices constituting violations of the CEA and CFTC Regulations,

as described herein, and pre- and post-judgment interest thereon from the date of such

violations;

    E.  An order directing Defendants, as well as any successors thereof, to make

full restitution, pursuant to such procedure as the Court may order, to every customer

or pool participant whose funds any Defendant received, or caused another person or

entity to receive, as a result of the acts and practices constituting violations of the

CEA and CFTC Regulations, as described herein, and pre- and post-judgment interest

thereon from the date of such violations;

F.  An order directing Defendants, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any customer or pool participant whose funds any Defendant received as a result of the acts and practices constituting violations of the CEA and CFTC Regulations, as described herein;

G.  An order directing Defendants, as well as any successors thereof, to pay a civil monetary penalty, plus post-judgment interest, for each violation of the CEA and CFTC Regulations described herein, in the amount of the greater of:  (i) $140,000 for each violation committed; or (ii) triple Defendants' monetary gain for each violation committed;

H.  An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C.
§§ 1920 and 2412 (2012); and

I.  An order directing such further relief as the Court deems proper.

March 23, 2015

Respectfully submitted,

U.S. COMMODITY FUTURES TRADING
COMMISSION
/s/ Timothy J. Mulreany
Timothy J. Mulreany
Chief Trial Attorney
Maryland Fed. Bar No.: 08262
tmulreany@cftc.gov
Attorney for Plaintiff
U.S. Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, DC
(202) 418-5306
(202) 418-5538