**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES COMMODITY FUTURES TRADING COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WESLEY A. BROWN,**<br>**EDWARD RUBIN,**<br>**and**<br>**MAVERICK INTERNATIONAL, INC.,**<br><br>**Defendants.** | **Civil Action No. 3:15-cv-354-J-39MCR** |

**CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS WESLEY A. BROWN, EDWARD RUBIN AND MAVERICK INTERNATIONAL, INC.**

On March 30, 2015, Plaintiff United States Commodity Futures Trading Commission ("Plaintiff" or "Commission"), filed a Complaint for Injunctive Relief, Civil Monetary Penalty, and Other Equitable Relief against Defendants Wesley A. Brown ("Brown"), Edward Rubin ("Rubin"), and Maverick International, Inc. ("Maverick") (collectively, the "Defendants"), for violations of the Commodity Exchange Act ("CEA" or "Act"), 7 U.S.C. §§ 1 *et seq.* (2012) and the Regulations promulgated thereunder. Complaint, Docket Entry ("D.E.") No. 3. On March 30, 2015, the Court entered an order granting Plaintiff's Motion for a Statutory Restraining Order, which froze Defendants' assets and prohibited Defendants from destroying, or denying the Commission access to, Defendants' books and records, among other relief. Statutory Restraining Order, D.E. No. 7. The Statutory Restraining Order, by its terms, expired April 8, 2015, unless extended or sooner dissolved. *Id.* Plaintiff also filed a Motion for Preliminary Injunction, seeking to continue the Statutory Restraining Order. Motion for Preliminary Injunction, D.E. No. 5.

On April 8, 2015, the Court entered an Order of Preliminary Injunction and Other Relief against Defendants ("PI Order"). D.E. No. 21. The PI Order froze assets under Defendants' control, prohibited Defendants from further violations of the Act and the Regulations, ordered an accounting of assets, permitted CFTC access to all of Defendants' books and records, and prohibited the destruction of documents.

## I.
## CONSENTS AND AGREEMENTS

To effect partial settlement of the matters alleged in the Complaint against Defendants Brown, Rubin and Maverick without a trial on the merits or any further judicial proceedings, Defendants Brown, Rubin and Maverick:

1. Consent to the entry of this Consent Order of Permanent Injunction and Other Relief Against Brown, Rubin and Maverick ("Consent Order");

2. Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledge service of the summons and Complaint;

4. Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5. Admit the jurisdiction of the Commission over the conduct and financed retail foreign currency transactions at issue in this action pursuant to the Act, 7 U.S.C. § 2(c)(2)(C) (2012);

6. Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7. Waive:

(a) Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1-148.30 (2014), relating to, or arising from, this action;

(b) Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from this Consent Order;

8. Consent to the continued jurisdiction of this Court over them for the purpose of implementing and carrying out the terms and conditions of all orders and decrees, including orders setting the appropriate amounts of restitution, and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action, even if Brown, Rubin and Maverick now or in the future reside and/or conduct business outside the jurisdiction of this Court;

9. Agree that they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waive any objection based thereon;

10. Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Brown, Rubin and Maverick shall undertake all steps necessary to ensure that their agents or employees under their authority or control understand and comply with this agreement; and

11. By consenting to the entry of this Consent Order, Brown, Rubin and Maverick neither admit nor deny the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which they admit. Further, Brown, Rubin and Maverick agree and intend that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Brown, Rubin and/or Maverick; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a (2012), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 – 3.75 (2014); and/or (c) any proceeding to enforce the terms of this Consent Order, including but not limited to proceedings to set the amount of restitution, and civil monetary penalty to be paid by Defendants in the above captioned matter.

12. Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 71 of Part V of this Consent Order, of any bankruptcy

proceeding filed by, on behalf of, or against them, whether inside or outside the United States, and

13. Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Brown, Rubin and Maverick in any other proceeding.

14. Brown, Rubin and Maverick consent to pay restitution, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the Commission and/or hearing before this Court.

15. Brown, Rubin and Maverick consent to pay a civil monetary penalty, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the Commission and/or hearing before this Court.

## II.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

16. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

### A. Findings of Fact

#### The Parties To This Consent Order

17. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act,

7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 – 190.10 (2014).

18. Defendant **Wesley Alan Brown** currently resides in North Myrtle Beach, South Carolina; during the relevant period Brown resided in Palm Coast, Florida. Brown held himself out as a "financial advisor" associated with Maverick. Brown has never been registered with the Commission in any capacity. Brown was registered as a securities broker/dealer agent from August 1991 through May 1996.

19. Defendant **Edward Rubin** resides in Winnabow, North Carolina. Rubin opened the commodity trading account carried in the name of Maverick at PFGBest, and was solely responsible for all futures trading in the account. Rubin was the sole officer of Maverick throughout the relevant period. Rubin has never been registered with the Commission in any capacity.

20. Defendant **Maverick International, Inc**. is a corporate entity organized by Rubin pursuant to the laws of the State of Delaware on or about November 17, 2006, and purportedly maintains offices at 2711 Centerville Road, Suite 120, PMB# 6113, Wilmington, Delaware, 19808; however, this address is actually the address of a mail forwarding service.

## A. The Scheme

21. During the relevant period, Brown and Rubin, individually and on behalf of Maverick, solicited at least 31 pool participants, and accepted or received approximately $2 million from pool participants, either directly or indirectly through capital contributions, the sale of stock or other forms of securities, for the purpose of trading commodity interests, including exchange traded commodity futures contracts and precious metals. Defendants thereupon co-mingled and/or misappropriated all funds they received from participants.

22. Brown and Rubin, individually and on behalf of Maverick, claimed to sell participants shares of stock in Maverick, representing that participants' funds would be pooled and used to trade commodity futures and precious metals, among other things, in a pooled investment vehicle Brown and Rubin identified as the "Maverick International Fund."

23. Defendants provided potential and actual participants with access to the Defendants' website, which contained solicitations to trade in commodity futures contracts and precious metals, in addition to other things.

24. Brown claimed to be an experienced trader and financial advisor, and while an associate pastor at a church located in Flagler Beach, Florida solicited members of the church to invest in Maverick The participants in the pool included a retired fireman from the New York City Fire Department, a retired airline mechanic, and others living on a fixed income.

25. In an email to one participant, Brown represented that the "Maverick International Fund" was a "diversified fund which holds gold, silver, energies, and food staples. It is a wonderful way to diversify you overall profolio (sic) and take advantage of upswings due to ever-diminishing natural resources. The website is www.wealthnavigator.org. Go to 'clients only' page for current share prices."

26. Once a participant had been convinced to invest their funds in the pool, the Defendants presented them with a one page "Private Placement – Letter of Intent and Disclosure" on Maverick letterhead, that purportedly showed them how many shares they had purchased, and the shares' current value. These letters also stated: "Expenses and fees are expected to approximate 20-25% of profits only. No fees will be assessed against my principal deposit, thereby Maverick International, Inc. earns fees only when the corporation's shares earn profit."

27. At the bottom of each letter was a statement noting the shareholder's name, address, the number of shares purchased and their purported value.

28. Some participants were provided a "Deposit Receipt" on Maverick letterhead, containing similar information.

29. Participants were mailed a "share purchase" statement noting how many shares of Maverick stock they purchased.

30. Brown represented to potential and actual participants, individually and on behalf of Maverick, in writing and in face-to-face meetings, that participants could check the value of their investment by accessing the website where they could see the "current share price per share" of Maverick. This representation was false.

31. Throughout the relevant period, Defendants represented to participants that Defendants were profitably trading in commodity futures contracts and precious metals, on behalf of participants. Such claims of profits were false.

32. Defendants also represented that they traded precious metals on behalf of participants. These representations were also false.

33. Defendants mailed participants a "Semi-Annual Report" that purported to show each participant their respective "portfolio holdings."

34. During the relevant period, Brown and Rubin solicited at least $2 million from pool participants for the Maverick commodity pool. Brown and Rubin deposited these funds into bank and trading accounts they opened in Maverick's name, not in the name of the pool, as well as in personal bank accounts.

35. Brown and Rubin also opened personal precious metals accounts held in their respective names with Bullion Direct, Inc., and deposited a combined total of $395,669.37 of pool participants' funds into these account during the relevant period.

36. In furtherance of the scheme, Brown and Rubin, individually and as the agent(s) of Maverick made material misrepresentations and omitted material facts in their solicitations and statements to actual and prospective participants as noted above, and further failed to disclose that Maverick was operating as a CPO without being registered with the CFTC as such, and failed to disclose that Brown and Rubin were each acting as an AP of a CPO without being registered with the CFTC as such.

37. Defendants misrepresented to participants in a letter dated October 5, 2012, that their funds had been "invested" at the FCM PFGBest, and that all participant funds had been "lost" as a result of the bankruptcy of PFGBest on July 10, 2012, nearly three months earlier. These representations were false.

38. Brown also met personally with participants who were members of his church, in October 2012 and thereafter, misrepresenting that all of their funds had been lost because of the bankruptcy of PFGBest,. These representations were false.

39. While Rubin had opened a commodity trading account at PFGBest, the account was not carried as a pooled account for the benefit of participants, but as a proprietary account in the name of Maverick; therefore all funds deposited into the account were misappropriated.

40. Further, of the approximately $500,000 deposited into the account, more than $400,000 had been lost in unsuccessful trading of commodity futures contracts.

41. At the time of PFGBest's bankruptcy, and as a direct result of Rubin's unprofitable trading, there remained approximately $97,000 in the trading account at PFGBest. As a result of the bankruptcy, this amount was reduced to $27,191.87.

42. Following the resolution of the bankruptcy of PFGBest, the remaining balance in the Maverick account was transferred to another FCM, Vision Financial Markets, LLC ("Vision"). On November 29, 2012, Rubin signed an authorization directing Vision to issue a check for the balance of $27,191.87 to Maverick. These funds were not returned to participants.

43. At no time did Brown or Rubin, acting individually and as the agents of Maverick, advise participants that Defendants had misappropriated their funds, that no trading on behalf of participants had ever occurred, that the bankruptcy of PFGBest was not the true cause of the loss of all participant funds, and that Defendants had been operating an illegal business enterprise.

44. All of the misrepresentations and omissions of fact made by Brown and Rubin to participants were material.

**B. Maverick Failed to Register with the Commission as a CPO**

45. During the relevant period, Maverick acted as a CPO by soliciting, accepting or receiving funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including but not limited to, trading commodity futures contracts.

46. Maverick used the mails and other means or instrumentalities of interstate commerce to provide potential pool participants with brochures and written statements about the "Maverick International Fund" commodity pool.

47. Maverick accepted funds in interstate commerce by mail and/or wire transmissions for participation in the "Maverick International Fund" commodity pool, and both sent and received funds by mail and/or wire transmissions to misappropriate participants' funds.

48. At no time during the relevant period was Maverick registered with the Commission as a CPO, or in any other capacity.

49. At no time during the relevant period did Maverick hold a valid exemption from the requirement to register as a CPO.

50. At no time during the relevant period did the Defendants advise prospective or actual pool participants that Maverick was not registered as a CPO as required by federal law.

**C. Brown and Rubin Failed to Register with the Commission as APs of a CPO**

51. Throughout the relevant period, Brown and Rubin, respectively, were associated with Maverick, a CPO, as a partner, officer, employee, consultant or agent (or any person occupying a similar status of performing similar functions), in any capacity that involved (i) the solicitation of funds, securities or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged; therefore, each has been AP of a CPO.

52. As of the date of the filing of this Complaint, neither Brown nor Rubin have been registered with the Commission as an AP of Maverick, or in any other capacity.

53. At no time during the relevant period have Brown or Rubin been exempt from the requirement to register as APs of a CPO.

54. At no time during the relevant period did the Defendants advise prospective or actual pool participants that Brown and/or Rubin were not registered as APs of a CPO as required by federal law.

## B. Conclusions of Law

### I. Jurisdiction and Venue

55. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

56. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the acts and practices in violation of the Act occurred within this District.

57. The Commission has jurisdiction over the financed retail forex transactions at issue pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012).

**II. Misappropriation, Misrepresentations and Omissions, Failure to Register**

58. By the conduct described in paragraphs 1 through 54 above, Brown, Rubin and Maverick willfully deceived, or attempted to deceive their customers in violation of Section 4b(a)(2)(A) - (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A) - (C) (2012); Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2014).

59. By the conduct described in paragraphs 1 through 54 above, Brown, Rubin and Maverick violated Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2012), in that they employed or are employing a device, scheme or artifice to defraud actual and prospective pool participants or engaged or are engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon the pool participants or prospective pool participants. The fraudulent acts include misappropriation, materially false omissions and misrepresentations, and distributing false account statements to pool participants.

60. By the conduct described in paragraphs 1 through 54 above, Maverick has never registered with the Commission as an CPO as required, in violation of Section 4m of the Act, as amended, 7 U.S.C. § 6m (2012).

61. By the conduct described in paragraphs 1 through 55 above, Brown and Rubin have never been registered with the Commission as an AP of CPO Maverick as required, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012).

62. Brown and Rubin controlled Maverick, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Maverick's act or acts in violation of the Act; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Brown and Rubin are liable for Maverick's violations of Section 4b(a)(2)(A) - (C) of the Act, as amended, 7 U.S.C.

§ 6b(a)(2)(A) - (C) (2012); Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2012); and Section 4m of the Act, as amended, 7 U.S.C. § 6m (2012).

63. The foregoing acts, omissions, and failures of Brown and Rubin occurred within the scope of their respective employment, office, or agency with Maverick; therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2014), Maverick is liable for Brown's and Rubin's acts, omissions, and failures in violation of Section 4b(a)(2)(A) - (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A) - (C) (2012); Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2012); and Section 4k(2) of the Act, as amended, 7 U.S.C. § 6k(2) (2012).

64. Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Commission Regulations.

## III.
## ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

65. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Brown, Rubin and Maverick are permanently restrained, enjoined and prohibited from directly or indirectly:

A. In connection with any order to make, or the making of, any leveraged, margined, or financed retail forex transaction, contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market,

1. cheating or defrauding or attempting to cheat or defraud any other person;

2. willfully deceiving or attempting to deceive any other person by any means whatsoever in regard to any order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed, with respect to any such order or contract for or with any other person; in violation of Section 4b(a)(2)(A) - (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A) - (C) (2012) and/or Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) (2012).

B. For Defendant Maverick, from acting as a CPO, as that term is defined in Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), and from engaging in a business which is of the nature of an investment trust, syndicate, or similar form of enterprise, and that, in connection therewith, soliciting, accepting, or receiving from others funds, securities, or property, either directly through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any: (I) commodity for future delivery, security futures product or swap; (II) agreement, contract, or transaction described in Section 2(c)(2)(C)(i) or Section 2(c)(2)(D)(i) of the Act; (III) commodity option authorized under Section 4c of the Act; or (IV) leverage transaction authorized under Section 19 of the Act, in violation of Section 4m of the Act, as amended, 7 U.S.C. § 6m (2012).

C. For Defendants Brown and Rubin, from being associated with a CPO as a partner, officer, employee, consultant or agent (or any person occupying a similar status or performing similar functions), and from soliciting funds, securities or property for participation in a commodity pool; or supervising any person or persons so engaged, in violation of Section 4k(2) of the Act, as amended, 7 U.S.C. § 6k(2) (2012).

66. Defendant Brown, Rubin and Maverick are also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

b. Entering into any transactions involving "commodity interests" (as that term is defined in Commission Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014)) for their own personal account or for any account in which they have a direct or indirect interest;

c. Having any commodity interests traded on their behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

g. Acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

## IV.

## STATUTORY AND EQUITABLE RELIEF

67. Defendants shall pay restitution, plus post-judgment interest, to each defrauded Customer.

68. Defendants shall pay a civil monetary penalty, plus post-judgment interest, to the Commission.

69. The Court shall determine the amounts of restitution, and civil monetary penalty and the procedures for payment and distribution of these monetary sanctions by further order upon: motion of the parties submitting to the Court a proposed consent order setting out their agreement on the amounts of restitution, and civil monetary penalty to be paid by Defendants in this matter; subsequent motion by the Commission; and/or hearing before this Court.

70. In connection with any Commission motion for restitution, and/or civil monetary penalties, and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that they did not violate the federal laws as alleged in the Complaint; (b) Defendants may not challenge the validity of their consents and agreements herein or this Consent Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the Findings of Fact and Conclusions of Law in this Consent Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, witness testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for restitution, and/or civil monetary penalties, the parties may take discovery, including discovery from appropriate non-parties.

## V.
## MISCELLANEOUS PROVISIONS

71. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Deputy Director Paul Hayeck
U.S. Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, DC
(202) 418-5312

Notice to Defendants Brown, Rubin and Maverick:

Robert Drake Wilcox
814 A1A North
Suite 202
Ponte Vedra Beach, Florida 32082
Counsel for Defendants

Charles J. Brown, III, Esq.
Gellert Scali Busenkell & Brown, LLC
913 North Market Street, 10th Floor
Wilmington, Delaware 19801
Counsel for Defendants

All such notices to the Commission shall reference the name and docket number of this action.

72. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

73. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the

application of the provision to any other person or circumstance shall not be affected by the holding.

74. Waiver: The failure of any party to this Consent Order or of any Customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or Customer at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

75. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution, and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action.

76. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

77. Authority: Rubin hereby warrants that he is the President of Maverick, and that this Consent Order has been duly authorized by Maverick and he has been duly empowered to sign and submit this Consent Order on behalf of Maverick.

78. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

79. Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order Of Permanent Injunction And Other Statutory And Equitable Relief Against Wesley A. Brown, Edward Rubin, and Maverick International, Inc.*

**CONSENTED TO AND APPROVED BY:**

Charles J. Brown, III, Esq.
Gellert Scali Busenkell & Brown, LLC
913 North Market Street, 10th Floor
Wilmington, Delaware 19801

Edward Rubin, individually and on behalf of
Maverick International, Inc.

Wesley A. Brown

David B. Kent
Attorney for Plaintiff
U.S. Commodity Futures Trading
Commission
1155 21st Street NW
Washington, DC 20581
(202) 418-5251

**IT IS SO ORDERED** at Jacksonville, Florida on this 18th day of April, 2016.

Brian J. Davis
United States District Judge